SAMUEL G. LIVERSIDGE (SBN 180578)
 sliversidge@gibsondunn.com
RODNEY J. STONE (SBN 145405)
 rstone@gibsondunn.com
JARED M. STRUMWASSER (SBN 275326)
 jstrumwasser@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, California  90071-3197
Telephone:   (213) 229-7365
Facsimile:   (213) 229-6365

Attorneys for Defendant
HP INC.

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| ROBERT DOTY, individually, and on behalf of all others similarly situated, | Case No. 5:16-cv-02063 |
|---|---|
| Plaintiff, | **MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT** |
| v. | [Fed. R. Civ. P. 9(b), 12(b)(1), 12(b)(6)] |
| HP, INC. and DOES 1-10, | |
| Defendant(s). | Hearing:<br>Date:        February 6, 2017<br>Time:        9:30 a.m.<br>Place:       Courtroom 650<br>Judge:      Hon. George H. King |
| | [Declaration of Jared M. Strumwasser filed concurrently herewith] |
| | ACTION FILED: September 28, 2016 |

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on Monday, February 6, 2017 at 9:30 a.m., or as thereafter as the matter may be heard before the Honorable George H. King, in Courtroom 650, the United States District Court, Central District of California, located at Royal Federal Building and United States Courthouse, 255 E. Temple Street, Los Angeles, CA, 90012, Defendant HP Inc. ("HP") will and hereby does move this Court, pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), to dismiss Plaintiff's Second Amended Class Action Complaint ("SAC") (ECF No. 16).

Plaintiff's SAC should be dismissed for two independent reasons. First, Plaintiff does not plead facts that are sufficient to state a plausible claim for relief under any of California's consumer protection statutes. Second, Plaintiff's allegations do not establish that he has standing under Article III or substantive California law.

Plaintiff's SAC fails to plausibly allege that HP engaged in any fraudulent, unfair, or unlawful conduct in violation of California's consumer protection statutes. Plaintiff's claims under California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), the "fraudulent" prong of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") fail because, although he generally contends that HP made misrepresentations relating to certain of its printers, Plaintiff does not identify a single specific statement that he contends was false. Plaintiff's allegations thus fall short of the particularity required by Rule 9(b). Nor does he allege any cognizable duty to disclose on the part of HP. In the absence of affirmative misrepresentations, the law does not recognize consumer protection claims predicated on nondisclosure theories unless a risk of physical injury to the consumer is present, which is not the case here.

Plaintiff's contention that HP engaged in "unlawful" business conduct in violation of the UCL is predicated in the first instance on his FAL and CLRA claims, and therefore it fails derivatively with those underlying claims for the reasons noted

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

above.  Plaintiff's alternative allegation of "unlawful" conduct predicated on an underlying claim of attempted monopolization in violation of Section 2 of the Sherman Act also fails, because Plaintiff has not adequately alleged the elements of such a claim.

Plaintiff's claim under the "unfair" prong of the UCL likewise fails because he does not adequately tether the purported "unfairness" of HP's alleged conduct to a violation of the Sherman Act or to any plausible impact on competition.  Plaintiff also does not sufficiently allege that the gravity of any harm to the alleged victims outweighs the utility of HP's conduct.

Alternatively, the SAC should be dismissed because Plaintiff fails to allege facts establishing that he has standing to sue under Article III of the U.S. Constitution and under California's consumer protection statutes.  Plaintiff fails to allege any cognizable obligation on the part of HP to make its printers compatible with any and all third-party cartridges.  Nor does Plaintiff adequately allege any representation by HP that would create such a duty, and, in the absence of any such representations, HP is under no duty to make its printers compatible with all third-party ink cartridges.  Because Plaintiff's alleged injury is premised on the loss of a benefit that was not a part of his bargain to begin with, he lacks standing to pursue his case as a matter of law.

This Motion is based upon this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declaration of Jared M. Strumwasser, the papers on file in this case, any oral argument that may be heard by the Court, and any other matters that the Court deems appropriate.

//
//
//
//
//
//

1        This Motion is made following the conference of counsel pursuant to Local Rule

2  7-3, which conference took place on December 16, 2016.

3

4  Dated:  December 23, 2016             Respectfully submitted,

5                           SAMUEL G. LIVERSIDGE

6                           RODNEY J. STONE

7                           JARED M. STRUMWASSER
                            GIBSON, DUNN & CRUTCHER LLP

8

9                       By:   */s/ Samuel G. Liversidge*
                           Samuel G. Liversidge

10                   Attorneys for Defendant HP INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

iv
DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ........................................................................................ 1

II.   STATEMENT OF RELEVANT FACTS.................................................. 3

III.  LEGAL STANDARD ............................................................................... 7

IV.   ARGUMENT............................................................................................. 8

    A.    Plaintiff's FAL Claim Fails.......................................................... 8

        1.    Plaintiff Fails to Identify with Particularity any Misrepresentation.............................................................. 8

        2.    Plaintiff Alleges No Cognizable Fraud-by-Omission Theory....... 11

    B.    Plaintiff's CLRA Claim Fails. ................................................... 12

    C.    Plaintiff's UCL Claim Fails. ..................................................... 14

        1.    Plaintiff Fails to State a Claim Under the "Fraudulent" Prong. ................................................................................ 14

        2.    Plaintiff Fails to State a Claim Under the "Unlawful" Prong. ...... 14

        3.    Plaintiff Fails to State a Claim Under the "Unfair" Prong. ........... 17

    D.    Plaintiff Lacks Standing to Sue................................................. 22

V.    CONCLUSION ....................................................................................... 25

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

# TABLE OF AUTHORITIES

<u>Pages</u>

**Cases**

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..................................................................8, 22

*Bardin v. Daimlerchrysler Corp.*,
  136 Cal. App. 4th 1255 (2006) ...........................................22

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................8

*Berry v. Am. Express Publ'g, Inc.*,
  147 Cal. App. 4th 224 (2007) ..............................................13

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ............................3, 4, 23, 24

*Carrea v. Dreyer's Grand Ice Cream, Inc.*,
  475 Fed. App'x 113 (9th Cir. 2012) .......................................11

*Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999)....................................15, 18, 19, 20

*In re Century Aluminum Co. Sec. Litig.*,
  729 F.3d 1104 (9th Cir. 2013) ...............................................25

*Chapman v. Pier 1 Imports (U.S.) Inc.*,
  631 F.3d 939 (9th Cir. 2011) ..................................................25

*Cox v. Valley Hope Ass'n*,
  2016 WL 4680165 (W.D. Mo. Sept. 6, 2016).................23, 24

*Cullen v. Netflix, Inc.*,
  2013 WL 140103 (N.D. Cal. Jan. 10, 2013)..............................23

*Daugherty v. Am. Honda Motor Co.*,
  144 Cal. App. 4th 824 (2006) ........................................12, 14

*Davis v. HSBC Bank Nev., N.A.*,
  691 F.3d 1152 (9th Cir. 2012) ..........................................11, 21

vi

Gibson, Dunn &
Crutcher LLP

*Dominic Corea LP v. ILD Telecommc'ns, Inc.*,
  2013 WL 821193 (C.D. Cal. Jan. 23, 2013)........................................................ 15, 19

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
  751 F.3d 990 (9th Cir. 2014) ...................................................................... 8, 20, 22

*Edwards v. Marin Park, Inc.*,
  356 F.3d 1058 (9th Cir. 2004) ............................................................... 1, 8, 10, 12

*Ford v. Hotwire, Inc.*,
  2007 WL 6235779 (S.D. Cal. Nov. 19, 2007)...................................................... 11

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*,
  528 U.S. 167 (2000)............................................................................................ 23

*Hall v. Sea World Entm't, Inc.*,
  2015 WL 9659911 (S.D. Cal. Dec. 23, 2015) ...................................................... 12

*Hodges v. Apple, Inc.*,
  640 F. App'x 687 (9th Cir. 2016).................................................. 2, 12, 13, 14, 15

*InfoStream Grp., Inc. v. PayPal, Inc.*,
  2012 WL 3731517 (N.D. Cal. Aug. 28, 2012) .................................................. 16, 17

*Johnson v. Fed. Home Loan Mortg. Corp.*,
  793 F.3d 1005 (9th Cir. 2015) ............................................................................ 11

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009) .............................................2, 8, 9, 10, 12, 13, 14, 15

*Kenery v. Wells Fargo, N.A.*,
  2015 WL 5138635 (N.D. Cal. Sept. 1, 2015)...................................................... 18

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .............................................................................. 5

*Kwikset Corp. v. Super. Ct.*,
  51 Cal. 4th 310 (2011) ....................................................................................... 23

*Lee v. Toyota Motor Sales, U.S.A., Inc.*,
  992 F. Supp. 2d 962 (C.D. Cal. 2014) ................................................................ 24

*Levitt v. Yelp! Inc.*,
  765 F.3d 1123 (9th Cir. 2014) ............................................................................ 21

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

Gibson, Dunn &
Crutcher LLP

*Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*,
    2014 WL 4774611 (N.D. Cal. Sept. 22, 2014)........................................................20

*Lozano v. AT&T Wireless Servs., Inc.*,
    504 F.3d 718 (9th Cir. 2007) ....................................................................... 18, 19

*Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*,
    2013 WL 12123772 (C.D. Cal. Feb. 26, 2013) ......................................................20

*Mass. Cas. Ins. Co. v. Katz*,
    2012 WL 12886215 (C.D. Cal. Oct. 17, 2012) ......................................... 15, 18, 19

*McCoy v. Nestle USA, Inc.*,
    173 F. Supp. 3d 954 (N.D. Cal. 2016)........................................................12

*Meyer v. Sprint Spectrum L.P.*,
    45 Cal. 4th 634 (2009) ....................................................................................23

*Morris v. BMW of N. Am., LLC*,
    2007 WL 3342612 (N.D. Cal. Nov. 7, 2007) ..........................................................19

*Palmer v. Apple Inc.*,
    2016 WL 1535087 (N.D. Cal. Apr. 15, 2016) ....................................... 15, 22

*Pelayo v. Nestle USA, Inc.*,
    989 F. Supp. 2d 973 (C.D. Cal. 2013) ............................................................11

*Person v. Google, Inc.*,
    2007 WL 183111 (N.D. Cal. June 25, 2007)........................................................16

*Pirozzi v. Apple Inc.*,
    913 F. Supp. 2d 840 (N.D. Cal. 2012) ..................................................................9

*Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*,
    2013 WL 5694452 (N.D. Cal. Oct. 18, 2013) ......................................................17

*Shred-It Am., Inc. v. MacNaughton*,
    2011 WL 1842997 (D. Haw. May 13, 2011) ......................................................16

*SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*,
    88 F.3d 780 (9th Cir. 1996) ....................................................................... 2, 18

*Smith v. Level 3 Commc'ns Inc.*,
    2014 WL 7463803 (N.D. Cal. Dec. 30, 2014) ..................................... 15, 16

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

Gibson, Dunn &
Crutcher LLP

*South Bay Chevrolet v. General Motors Acceptance Corporation*,
   72 Cal. App. 4th 861 (1999) .................................................................... 18, 21

*Spokeo, Inc. v. Robins*,
   136 S. Ct. 1540 (2016) ................................................................................ 24

*Sprewell v. Golden State Warriors*,
   266 F.3d 979 (9th Cir. 2001) ........................................................... 3, 11, 14

*Vess v. Ciba-Geigy Corp.*,
   317 F.3d 1097 (9th Cir. 2003) ..................................................................... 9

*Wahoo Int'l, Inc. v. Phix Doctor, Inc.*,
   2015 WL 3872343 (S.D. Cal. June 23, 2015) ........................................... 18

*Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*,
   382 U.S. 172 (1965) .................................................................................... 17

*Werbel ex rel. v. Pepsico, Inc.*,
   2010 WL 2673860 (N.D. Cal. July 2, 2010) ............................................. 11

*Westlake Servs., LLC v. Credit Acceptance Corp.*,
   2015 WL 9948723 (C.D. Cal. Dec. 7, 2015) .............................. 16, 18, 20

*Williamson v. McAfee, Inc.*,
   2014 WL 4220824 (N.D. Cal. Aug. 22, 2014) .......................................... 23

*Wilson v. Hewlett-Packard Co.*,
   668 F.3d 1136 (9th Cir. 2012) ........................................ 2, 12, 13, 14, 15

**Statutes**

15 U.S.C. § 1 ....................................................................... 16, 18, 20, 21

15 U.S.C. § 2 ............................................................................ 2, 15, 16, 20

15 U.S.C. § 45(a) ......................................................................................... 19

Cal. Bus. & Prof. Code § 17200 1, 2, 3, 11, 12, 14, 15, 16, 18, 19, 20, 21, 22, 23, 24, 25

Cal. Bus. & Prof. Code § 17204 ................................................................. 23

Cal. Bus. & Prof. Code § 17500 ........................ 1, 2, 3, 9, 10, 11, 12, 13, 14, 15, 22, 23

Cal. Bus. & Prof. Code § 17535 ................................................................. 23

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

Gibson, Dunn &
Crutcher LLP

Cal. Civ. Code § 1750 ............................................... 1, 2, 3, 11, 12, 13, 14, 15, 22, 23, 24

Civ. Code § 1770 ........................................................................................ 13

Civ. Code § 1780(a) .................................................................................... 23

**Rules**

Fed. R. Civ. P. 8 ..................................................................................... 18, 21

Fed. R. Civ. P. 9(b) .......................................................................................... 8

Fed. R. Civ. P. 12(b)(1) ............................................................................... 25

Fed. R. Civ. P. 12(b)(6) ............................................................................... 25

**Constitutional Provisions**

U.S. Constitution Article III ....................................................... 3, 9, 23, 24, 25

Gibson, Dunn &
Crutcher LLP

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I. INTRODUCTION

Plaintiff Robert Doty brings a nationwide putative class action alleging that HP falsely advertised that his printer would be compatible with non-HP, third-party ink cartridges, but then modified the firmware on his printer to render certain third-party ink cartridges inoperable.  He contends that HP's conduct violated California's False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.* ("FAL"), the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"), and the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA").  Despite amending his complaint twice, Plaintiff still fails to plausibly allege that HP engaged in any fraudulent, unfair, or unlawful conduct in violation of any of these statutes.  Nor does he adequately allege that he has suffered any cognizable injury sufficient to give him standing.  Therefore, his Second Amended Class Action Complaint ("SAC") should be dismissed.

Plaintiff claims that HP failed to honor written representations on his printer box allegedly promising that his printer would be compatible with all third-party ink cartridges.  He claims that HP breached its written representations when, in September 2016, HP "forced a firmware modification on his computer that prevented him from using third party ink-cartridges" in his printer.  SAC ¶ 34.  As a threshold matter, Plaintiff fails to plead any misrepresentations by HP with the specificity mandated by Rule 9(b), which requires him to plead "the time, place, and specific content of the false representations." *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (citation and quotation marks omitted).

As in his prior complaints, Plaintiff does not identify *any* specific HP language that he claims was false.  Instead of quoting particular language he contends was fraudulent, Plaintiff merely provides amorphous descriptions of language allegedly appearing on the printer packaging that he claims gave him the "impression" that all third-party ink cartridges would work in his printer.  This type of evasive pleading is

inadequate to allege fraud-based claims. *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009).  The reason for Plaintiff's obfuscation is apparent when one sees the actual language on the printer box, which does not reference "generic" ink cartridges, but rather "Original HP Ink." *See* Declaration of Jared M. Strumwasser ("Strumwasser Decl."), Ex. A (as set forth below, the Court may consider the content of documents incorporated by reference in Plaintiff's SAC, like his printer packaging).

Nor can Plaintiff proceed under a fraudulent nondisclosure theory.  Under California's consumer protection statutes, "[a] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1141 (9th Cir. 2012) (citation and quotation marks omitted).  Plaintiff has failed to allege with particularity any misrepresentations that would give rise to a duty to disclose.  And Plaintiff does not (and cannot) allege that any purported nondisclosure about HP's printers or ink cartridges creates a "risk of physical injury or safety concerns." *Hodges v. Apple, Inc.*, 640 F. App'x 687, 690 (9th Cir. 2016).

Plaintiff's contention that HP engaged in "unlawful" business conduct in violation of the UCL is derivative of his FAL and CLRA claims and therefore fails alongside them.  His alternative allegation that HP's conduct was an "unlawful" attempted monopolization in violation of Section 2 of the Sherman Act is equally defective.  Plaintiff fails to sufficiently allege the elements of an attempted monopolization claim under Section 2, including that HP's alleged conduct gives it a "dangerous probability of success" in monopolizing a relevant antitrust market. *SmileCare Dental Grp. v. Delta Dental Plan of Cal., Inc.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation and quotation marks omitted).

Plaintiff's claim that HP engaged in "unfair" business practices under the UCL also fails.  Plaintiff does not satisfy any of the tests that courts have applied in assessing the sufficiency of such claims.  Plaintiff's UCL claim relies solely on rote recitation of claim elements and antitrust buzzwords and lacks any specific factual

allegations.  Plaintiff does not plausibly allege that HP violated any particular antitrust law or policy; Plaintiff does not allege any plausible anticompetitive effect that HP's conduct had or threatens to have; and Plaintiff does not plausibly allege that any harm he suffered outweighs the utility of HP's conduct.  These shortcomings are fatal.

Finally, Plaintiff's SAC should be dismissed for the independent reason that he has not alleged a cognizable injury-in-fact caused by HP's alleged conduct, as he must to have standing under Article III of the U.S. Constitution and statutory standing under the FAL, UCL, and CLRA.  Plaintiff's alleged injury is "premised on the loss of a … benefit that was not a part of the bargain to begin with," so he lacks standing to pursue his case as a matter of law.  *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009).  HP never promised that Plaintiff's printer would be compatible with ink cartridges offered by third parties.  Without some affirmative promise or guarantee, Plaintiff fails to allege any facts that would give rise to a duty on HP's part to keep its printers compatible with all third-party ink cartridges—let alone cartridges that use cloned and infringing security chips like those affected by the authentication procedures in HP's firmware at issue here.

Accordingly, Plaintiff's SAC should be dismissed in its entirety.

## II.  STATEMENT OF RELEVANT FACTS

Plaintiff alleges that he purchased an HP Officejet Pro 8610 printer from HP's website on December 14, 2015.  SAC ¶ 21.[1]  "[W]hen purchasing the printer," Plaintiff contends that he "was under the impression that ... [he] would be able to use third party ink-cartridges" and "planned on using third party ink-cartridges because HP ink-cartridges were much more expensive."  *Id.* ¶¶ 40-41.  Plaintiff claims that he "used both HP ink cartridges and third party ink cartridges; however, was unable to get the

_____

[1]  HP does not concede any of the factual allegations contained in Plaintiff's SAC and reserves the right to contest all allegations fully at the appropriate time.  For purposes of this motion only, HP accepts Plaintiff's factual allegations as true.  *See Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001).

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

1    third party ink cartridges to work." *Id.* ¶ 31; *see also id.* ¶ 33 ("Upon coming home

2    and installing the ink cartridge, Plaintiff could not get the ink cartridge to work.").

3          Plaintiff alleges that HP "expressly represented to Plaintiff, through written

4    statements, that Plaintiff's printer would have certain features and functioning." *Id.*

5    ¶ 39.  He claims that "Defendant represented to Plaintiff that his printer would be

6    compatible with all 950, 950xl, 951, and 951xl ink cartridges, on the face of its

7    standard packaging." *Id.*  He characterizes "950, 950xl, 951, and 951xl ink cartridges"

8    as "generic part numbers for all cartridges that are compatible in size and function for

9    Plaintiff's printer." *Id.* ¶ 24.[2]  Plaintiff alleges that "[n]owhere on any advertisements

10   viewed by Plaintiff, including on the carton or packaging of his printer, did Plaintiff

11   see any representations by Defendant that Plaintiff would only be able to use HP brand

12   ink-cartridges." *Id.* ¶ 25.  He further alleges that at the time he "purchased the printer,

13   almost every printer allowed the use of third party ink-cartridges and so Plaintiff

14   reasonably believed that he would be able to use third party ink-cartridges." *Id.* ¶ 41.

15   He claims that HP's "representations and omissions made Plaintiff believe that he

16   could use any brand of 950, 950xl, 951, and 951xl ink cartridges, including third party

17   ink cartridges when purchasing the printer," and he "relied on Defendant's

18   representations and omissions that Plaintiff would be able to purchase and use third

19   party ink-cartridges with his printer." *Id.* ¶¶ 25, 44.

20         Plaintiff does not quote any of the language from his printer box that he claims

21   misled him.  Nor does he attach the printer box to his SAC, instead choosing to

22

23

24   _____

25   [2]  While not necessary to the instant motion, Plaintiff mischaracterizes the cartridge
     numbers "950, 950xl, 951, and 951xl" as "generic part numbers."  Those numbers
26   are *HP* part numbers for its branded HP ink cartridges.  That third-party
     manufacturers may choose to identify their knock-off cartridges as "950, 950xl,
27   951, and 951xl" cartridges in order to associate them with the HP products with
     which they are compatible does not convert those HP part numbers into "generic
28   part numbers."

Gibson, Dunn &
Crutcher LLP

describe it in his pleading.[3]  The actual language appearing on the printer packaging does not contain the language that Plaintiff generally describes in his SAC.  Instead, it mentions "HP Original Ink" 950 and 951 ink cartridges; it does not mention third-party ink cartridges at all.  *See* Strumwasser Decl., Ex. A.  Plaintiff would have seen the following on his printer box:



---

[3]  The Court can consider the packaging when ruling on this motion, because Plaintiff incorporated it by reference into his SAC.  *See Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) ("[U]nder the incorporation by reference doctrine, [courts can] take into account documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.") (citation and quotation marks omitted).

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

*Id.*

Plaintiff further alleges that "the box of his printer ... contained a card that represented that Plaintiff could use 950, 950xl, 951, and 951xl ink cartridges with the printer" and "an advertisement which stated 'Say it best with Original HP ink.'"  SAC ¶ 29.  He contends that he "believed from this statement that Defendant was advertising its own original equipment manufacturer brand product, and recommending that Plaintiff chose [sic] it over generic ink cartridges," so he allegedly "inferred from this advertisement that Defendant was representing that generic ink cartridges would be compatible with his printer." *Id.*

In September 2016, Plaintiff claims to have "discovered that [HP] had forced a firmware modification on his computer that prevented him from using third party ink-cartridges" in his printer. *Id.* ¶ 34.  He contends that HP released this firmware modification "[i]n an effort to dominate the ink cartridge marketplace." *Id.* ¶ 4.  Plaintiff asserts that the alleged modifications "[made] the printer[] no longer what Plaintiff ... had bargained for," and that he "would not have purchased the printer if he knew that the ... statements made by Defendant were false and that Defendant would forcibly control and modify his printer." *Id.* ¶¶ 10, 47.

HP has publicly explained that its firmware modification "updated a cartridge authentication procedure in select models of HP office inkjet printers to ensure the best consumer experience and protect them from counterfeit and third-party ink cartridges that do not contain an original HP security chip[,] that infringe on our IP[, and that] …. expose[] [customers] to quality and potential security risks, compromising the printing experience." *See Dedicated to the best printing experience*, https://newsblog.ext.hp.com/t5/HP-newsroom-blog/Dedicated-to-the-best-printing-experience/ba-p/451.  Plaintiff's SAC deliberately ignores that the authentication procedure affected only third-party ink cartridges with a cloned security chip that infringed HP's intellectual property; third-party ink cartridges containing original HP security chips continued to function at all times, including after the challenged

Gibson, Dunn & Crutcher LLP

firmware was installed.  Plaintiff also conspicuously fails to acknowledge that soon after the firmware update at issue was released, HP made available to all customers a separate "optional firmware update" that removes the cartridge authentication feature and permits the use of third-party ink cartridges that do not contain an original HP security chip as well.  *Id.*  Thus, any customer with an affected printer who wants to remove the features that Plaintiff complains of can do so by simply downloading and installing the optional firmware patch, making any claim of injury implausible at best. While acceptance of these facts is not necessary to grant the instant motion, HP believes they provide important context for Plaintiff's claims.

## III.  LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions."  *Twombly*, 550 U.S. at 555 (citation omitted).  Allegations that "'are no more than conclusions, are not entitled to the assumption of truth.'"  *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014) (quoting *Iqbal*, 556 U.S. at 679).  Rather, "plaintiffs must include sufficient 'factual enhancement' to cross 'the line between possibility and plausibility.'"  *Eclectic Props.*, 751 F.3d at 995 (quoting *Twombly*, 550 U.S. at 557); *see also Twombly*, 550 U.S. at 555 (plaintiff's allegations must "raise a right to relief above the speculative level").  This plausibility requirement is meant to ensure that "it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation."  *Eclectic Props.*, 751 F.3d at 996 (citation omitted).

Federal Rule of Civil Procedure 9(b) imposes a heightened pleading standard for all claims "grounded in fraud."  *Kearns*, 567 F.3d at 1122; *see also id.* at 1126 (Rule 9(b) applies to all "averments of fraud.").  In order to satisfy this heightened pleading

standard, a plaintiff must "'state with particularity the circumstances constituting fraud.'" *Id.* at 1124 (quoting Fed. R. Civ. P. 9(b)). This means that the complaint must specify "'the who, what, when, where, and how' of the misconduct charged." *Id.* (citation omitted); *see also Edwards.*, 356 F.3d at 1066 (plaintiff must provide "the time, place, and specific content of the false representations") (citation and quotation marks omitted). In addition to identifying with particularity the statement he contends was false, the plaintiff must allege with specificity "what is false or misleading about [that] statement, and why it is false." *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003) (citation and quotation marks omitted).

## IV. ARGUMENT

Plaintiff's SAC should be dismissed for two independent reasons. First, Plaintiff does not plead facts sufficient to state a plausible claim for relief under any of California's consumer protection statutes. Second, Plaintiff's allegations do not establish that he has standing under Article III or substantive California law.

### A. Plaintiff's FAL Claim Fails.

#### 1. Plaintiff Fails to Identify with Particularity any Misrepresentation.

The FAL prohibits the public dissemination of untrue or misleading advertising in connection with the sale of property or services. Cal. Bus. & Prof. Code § 17500. Claims under the FAL sounding in fraud, as here, are subject to Rule 9(b)'s heightened pleading standard. *See Pirozzi v. Apple Inc.*, 913 F. Supp. 2d 840, 850 (N.D. Cal. 2012) ("Plaintiff's claim[] under the ... FAL .... sound[s] in fraud, and [is] subject to the heightened pleading requirements of Rule 9(b).") To meet this standard, a plaintiff must "specif[y] what [the alleged] advertisements or other sales material specifically stated" (*Kearns*, 567 F.3d at 1126) and "the particulars of [his] own experience reviewing or relying upon any of those statements" (*Pirozzi*, 913 F. Supp. 2d at 850).

Even after amending his complaint twice, Plaintiff fails to identify *any* specific HP representation guaranteeing the compatibility of third-party ink cartridges with his

printer.  Plaintiff vaguely references "representations and omissions that Plaintiff would be able to purchase and use third party ink-cartridges with his printer" and alludes to "written statements" from HP that left him "*under the impression* that ... [he] would be able to use third party ink-cartridges" with his printer.  SAC ¶¶ 39, 41, 44 (emphasis added).  But to satisfy Rule 9(b), Plaintiff must do more; he must plead the contents of the "written statements" on which he purports to rely with particularity. *See Kearns*, 567 F.3d at 1124 (the complaint must specify "'the who, what, when, where, and how' of the misconduct charged") (citation omitted).  He must identify the specific words HP used to give him his alleged "impression." *See Edwards*, 356 F.3d at 1066 (plaintiff must provide "the time, place, and *specific content* of the false representations") (emphasis added) (citation and quotation marks omitted); *Kearns*, 567 F.3d at 1126 (a plaintiff must "specif[y] what [the alleged] advertisements or other sales material *specifically stated*") (emphasis added).  Plaintiff has not done so.

Plaintiff's FAL claim relies on a deliberately vague allegation that "Defendant represented to Plaintiff that his printer would be compatible with all 950, 950xl, 951, and 951xl ink cartridges, on the face of its standard packaging," which he characterizes as "generic part numbers for all cartridges that are compatible in size and function for Plaintiff's printer."  SAC ¶ 24, 39.[4]  He claims that "[t]hese representations … made Plaintiff believe that he could use any brand of 950, 950xl, 951, and 951xl ink cartridges, including third party ink cartridges when purchasing the printer." *Id.* ¶ 25. Again, however, these are not quotes of actual HP language from his printer box—they are Plaintiff's *characterizations* of that alleged language.  Plaintiff's failure to quote the actual language he claims was fraudulent in and of itself warrants dismissal under Rule 9(b). *Edwards*, 356 F.3d at 1066; *Kearns*, 567 F.3d at 1126.

---

[4]  As noted above, "950, 950xl, 951, and 951xl" are not "generic part numbers"—they are *HP* part numbers, as shown by the packaging for Plaintiff's own printer.  But even assuming those numbers as they appear on the box were considered to be generic as alleged, Plaintiff's claim still fails.

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

Upon review of the *actual* printer packaging at issue, it becomes clear why Plaintiff chose not to attach it or quote directly from it in his SAC.  The packaging states that the printer is compatible with "HP Original Ink" 950 and 951 cartridges (Strumwasser Decl., Ex. A)—*not* "all 950, 950xl, 951, and 951xl ink cartridges," as Plaintiff contends (SAC ¶ 39).  The box does not mention generic cartridges anywhere—rather, it references 950 and 951 cartridges of "HP Original Ink."  *Id.* Because Plaintiff's allegations describing the representations on the printer packaging conflict with the language actually appearing on the packaging, the Court can disregard Plaintiff's contradictory allegations.  *See Sprewell*, 266 F.3d at 988 ("The court need not, however, accept as true allegations that contradict matters properly subject to judicial notice or by exhibit."); *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008 (9th Cir. 2015) ("[W]e need not accept as true allegations contradicting documents that are referenced in the complaint.") (citation and quotation marks omitted).  Thus, in addition to being pled with insufficient particularity, Plaintiff's fraud allegations are belied by the very writing on which he purports to rely.

The only other HP statement mentioned in Plaintiff's SAC is one purportedly appearing on a "printer ink card" inside his printer box, which he contends stated: "Say it best with Original HP ink."  SAC ¶ 29.  Plaintiff cannot credibly claim that this statement mentioning *only* "Original HP ink" constitutes a guarantee of compatibility with *non*-"Original HP ink."  Plaintiff's contention that this statement is "fraudulent" simply is not plausible, even if he himself incorrectly interpreted it.  "[A] representation does not become false and deceptive merely because it will be unreasonably misunderstood by an insignificant and unrepresentative segment of the class of persons to whom the representation is addressed."  *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1162 (9th Cir. 2012) (citation and quotation marks omitted).  Thus, this allegation cannot survive a motion to dismiss either.  *Id.*, *see also*, *e.g.*, *Carrea v. Dreyer's Grand Ice Cream, Inc.*, 475 Fed. App'x 113, 115 (9th Cir. 2012) (affirming dismissal of FAL, UCL, and CLRA claims because it "strains credulity to

claim that a reasonable consumer would be misled" by the alleged misrepresentations on the product packaging); *Werbel ex rel. v. Pepsico, Inc.*, 2010 WL 2673860, at *3 (N.D. Cal. July 2, 2010) (dismissing FAL, UCL, and CLRA claims where "[i]t is obvious from the product packaging that no reasonable consumer would believe" plaintiff's alleged interpretation); *Ford v. Hotwire, Inc.*, 2007 WL 6235779, at *4 (S.D. Cal. Nov. 19, 2007) (same where "[p]laintiff's complaint fail[ed] to allege a plausible claim that a reasonable consumer is likely to be deceived by" defendant's representations); *Pelayo v. Nestle USA, Inc.*, 989 F. Supp. 2d 973, 980 (C.D. Cal. 2013) (same where plaintiff's understanding of defendant's representation would not be "shared by the reasonable consumer").  Moreover, because these alleged statements were *inside* the printer box and thus by definition could not have induced the purchase Plaintiff made prior to seeing them, they are not actionable under the FAL as a matter of law.  *See*, *e.g.*, *Hall v. Sea World Entm't, Inc.*, 2015 WL 9659911, at *5 (S.D. Cal. Dec. 23, 2015) (dismissing UCL, FAL, and CLRA claims because "the complaint d[id] not allege that the named plaintiffs actually saw or read [the challenged] statements … *prior to* purchasing their [items]") (emphasis added).

Because Plaintiff has failed to sufficiently allege any misrepresentation made by HP, his FAL claim must be dismissed.  *Edwards*, 356 F.3d at 1066; *see also Kearns*, 567 F.3d at 1126.

### 2. Plaintiff Alleges No Cognizable Fraud-by-Omission Theory.

Plaintiff's attempt to alternatively pursue a nondisclosure theory (*see* SAC ¶¶ 72, 75) fails as well, as he has not alleged any facts that could support a finding that HP had a cognizable duty to disclose anything regarding his printer's compatibility with third-party ink cartridges.  "[A] manufacturer's duty to consumers is limited to its warranty obligations absent either an affirmative misrepresentation or a safety issue." *Wilson.*, 668 F.3d at 1141 (interpreting *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 835 (2006) and rejecting a "broad obligation to disclose" on the part of manufacturers).  That is, where a plaintiff cannot identify a false or materially

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

misleading affirmative representation, only omissions regarding a "physical injury" or "safety concerns" are actionable under California's consumer protection statutes. *Hodges*, 640 F. App'x at 690; *Wilson*, 668 F.3d at 1141; *McCoy v. Nestle USA, Inc.*, 173 F. Supp. 3d 954, 965 (N.D. Cal. 2016) ("absent affirmative misrepresentations, an obligation to disclose under California law extends only to matters of product safety").

Plaintiff's allegations meet neither criterion for pursuing a nondisclosure theory. As explained above, Plaintiff has failed to identify any affirmative misrepresentation by HP. Nor does Plaintiff allege that incompatibility with third-party ink cartridges raises any sort of physical "safety issue." *See Wilson*, 668 F.3d at 1141-43. As such, Plaintiff's FAL nondisclosure theory necessarily fails. *See Hodges*, 640 F. App'x at 690 ("To the extent [plaintiff's consumer protection] claims are based on an alleged fraudulent omission, they also fail as a matter of law," because plaintiff "ha[s] not alleged any representation regarding component manufacturers or quality or a failure to disclose a risk of physical injury or safety concerns"). And while Plaintiff vaguely alleges that HP had a "duty to disclose" and "omitt[ed] the crucial fact that Defendant had intended to prevent Plaintiff's use of a third party ink-cartridge" (SAC ¶¶ 27, 41), he does not plausibly allege why any such disclosure would be legally required. *See Wilson*, 668 F.3d at 1141-43. Apart from his deficient allegation that HP represented it would, Plaintiff fails to allege any basis for a duty on HP's part to keep its printers compatible with all third-party ink cartridges—let alone cartridges that use cloned and infringing security chips like those affected by the authentication procedure in HP's firmware at issue here. Plaintiff's omission theory thus fails.

## B. Plaintiff's CLRA Claim Fails.

The CLRA prohibits certain unfair and deceptive acts enumerated in California Civil Code section 1770, including misrepresentations about the characteristics or qualities of consumer goods. *See* Cal. Civ. Code § 1770; *Berry v. Am. Express Publ'g, Inc.*, 147 Cal. App. 4th 224, 232 (2007). Here, Plaintiff bases his CLRA claim on the same vague and conclusory allegations made in support of his FAL claim—that HP

1   "made false and misleading representations" regarding the "features and functioning"

2   of his printer.  SAC ¶¶ 107-08.  Because this claim also sounds in fraud, Plaintiff must

3   satisfy Rule 9(b) for his CLRA claim as well.  *See Kearns*, 567 F.3d at 1124-26

4   (applying Rule 9(b) to CLRA claim).  He fails to do so.

5          Plaintiff's SAC contains no factual allegations regarding any affirmative

6   misrepresentations made by HP concerning his printer that could support a claim under

7   the CLRA.  As explained with respect to his FAL claim, Plaintiff's allegations

8   concerning the representations appearing on the packaging of his printer are

9   insufficient under Rule 9(b), because he does not allege the specific content of those

10  representations.  *See Kearns*, 567 F.3d at 1126 (affirming dismissal of CLRA and UCL

11  claim under Rule 9(b) because "[n]owhere ... does Kearns specify what the television

12  advertisements or other sales material specifically stated").  Moreover, the language

13  actually appearing on the packaging of his HP printer (*see* Strumwasser Decl., Ex. A)

14  contradicts his characterizations of HP's representations, so the Court "need not …

15  accept [Plaintiff's allegations] as true."  *Sprewell*, 266 F.3d at 988.  And his allegations

16  concerning representations on the "printer ink card" inside of his printer box are

17  similarly inadequate, as they do not even *mention* third-party ink cartridges, and he by

18  definition did not see them prior to making his purchase.

19         Plaintiff's alternative fraud-by-omission CLRA theory likewise fails for the

20  same reason as his FAL nondisclosure theory.  It is subject to the same limitations,

21  requiring the presence of an "affirmative misrepresentation or a safety issue."  *Wilson*,

22  668 F.3d at 1141; *Hodges*, 640 F. App'x at 690.  Because the SAC fails to allege any

23  affirmative misrepresentation and is "devoid of factual allegations showing any

24  instance of physical injury or any safety concerns posed by the [alleged] defect," the

25  CLRA claim must also be dismissed.  *Daugherty*, 144 Cal. App. 4th at 836-37

26  (affirming dismissal of CLRA claim alleging nondisclosure); *Hodges*, 640 F. App'x at

27  690 (same); *Wilson*, 668 F.3d at 1141-43 (same).

28

## C.     Plaintiff's UCL Claim Fails.

The UCL prohibits "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability." *Kearns*, 567 F.3d at 1127.  Plaintiff attempts to plead all three theories of UCL liability, yet he fails to state a plausible claim under any of them.

### 1.     Plaintiff Fails to State a Claim Under the "Fraudulent" Prong.

To state a claim under the "fraudulent" prong of the UCL, Plaintiff must plausibly allege that the "purportedly fraudulent business practice [of HP] is one 'in which members of the public are likely to be deceived.'"  *Dominic Corea LP v. ILD Telecommc'ns, Inc.*, 2013 WL 821193, at *4 (C.D. Cal. Jan. 23, 2013) (King, J.) (citation omitted).  Claims pursued under the "fraudulent" prong of the UCL are subject to the heightened pleading standard in Rule 9(b).  *See Kearns*, 567 F.3d at 1125-26.

Plaintiff's claim under this "fraudulent" prong of the UCL is indistinguishable from his FAL and CLRA claims, and it fails for the same reasons.  Again, his SAC identifies no specific HP misrepresentation, and the vague allegations that he makes are contradicted by the actual language on his printer box.  And because his fraudulent nondisclosure theory under the UCL is subject to the same limitations as his faulty FAL and CLRA claims—namely, that the claim be predicated on "an affirmative misrepresentation or a safety issue" (*Wilson*, 668 F.3d at 1141-43; *Hodges*, 640 F. App'x at 690)—that theory fails as well.

### 2.     Plaintiff Fails to State a Claim Under the "Unlawful" Prong.

The "unlawful" prong of the UCL "borrows violations of other law and treats them as unlawful practices."  *Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citation and quotation marks omitted).  To state a claim under this prong, Plaintiff "must adequately plead a violation of a specific alternative

Gibson, Dunn & Crutcher LLP

statute." *Smith v. Level 3 Commc'ns Inc.*, 2014 WL 7463803, at *4 (N.D. Cal. Dec. 30, 2014).

Plaintiff predicates his claim of "unlawful" conduct on alleged violations of the FAL, the CLRA, and Section 2 of the Sherman Act. *See* SAC ¶¶ 101, 103. Because Plaintiff fails to plead viable FAL and CLRA claims, as shown above, his derivative "unlawful" UCL claim cannot be based on those statutes. *See Palmer v. Apple Inc.*, 2016 WL 1535087, at *6 (N.D. Cal. Apr. 15, 2016) ("[B]ecause the court finds that plaintiff's allegations are insufficient to state a claim under the CLRA or the FAL, plaintiff's claims under the UCL' s unlawful prong must also be dismissed."); *Smith*, 2014 WL 7463803, at *4 (dismissing UCL claim for failure to "adequately plead a violation of a specific alternative statute").

Plaintiff's new reference in his SAC to Section 2 of the Sherman Act does not save his UCL claim, as he does not even attempt to plead a viable cause of action under the Sherman Act. "A plaintiff's 'intonement of a statutory label ... without any allegation of facts showing which [d]efendant violated [a law] and how are insufficient to state a claim.'" *Mass. Cas. Ins. Co. v. Katz*, 2012 WL 12886215, at *6 (C.D. Cal. Oct. 17, 2012) (King, J.) (quoting *Rupisan v. JP Morgan Chase Bank, NA*, 2012 WL 3764022, at *19 (E.D. Cal. Aug. 29, 2012)). To state a claim for attempted monopolization under Section 2 of the Sherman Act, *inter alia*, "antitrust plaintiffs must … properly allege a relevant market" (*Shred-It Am., Inc. v. MacNaughton*, 2011 WL 1842997, at *5 (D. Haw. May 13, 2011)) and a "dangerous probability of success" monopolizing that market (*InfoStream Grp., Inc. v. PayPal, Inc.*, 2012 WL 3731517, at *6 (N.D. Cal. Aug. 28, 2012)). Even construed in the most favorable light, the SAC fails to adequately plead these elements.

First, "[f]ailure to allege the relevant market is an appropriate ground for dismissal of a Sherman Act claim." *Person v. Google, Inc.*, 2007 WL 183111, at *3 (N.D. Cal. June 25, 2007). "The relevant market includes both the product market and the geographic market." *Shred-it Am., Inc.*, 2011 WL 1842997, at *5. Plaintiff's SAC

Gibson, Dunn & Crutcher LLP

1   asserts in only the most conclusory terms that HP has attempted to monopolize the

2   "ink cartridge marketplace" (SAC ¶ 4), but he provides no factual details *defining* that

3   alleged market qualitatively or geographically.  For example, Plaintiff does not identify

4   what companies and products comprise the relevant market; he does not identify which

5   products are excluded from the relevant market; he does not identify the geographic

6   boundaries of the relevant market; and he does not address the cross-elasticity of

7   supply or demand in the relevant market.  His Sherman Act claim thus fails at the very

8   outset.  *See*, *e.g.*, *Shred-It Am., Inc.*, 2011 WL 1842997, at *6 ("Because [defendant]

9   has provided nothing more than the legal conclusion that the relevant market is the

10  'mobile, on-site document destruction industry in Hawaii,' it has not alleged a legally

11  cognizable relevant market and its antitrust claim must be dismissed."); *Westlake*

12  *Servs., LLC v. Credit Acceptance Corp.*, 2015 WL 9948723, at *5 (C.D. Cal. Dec. 7,

13  2015) (dismissing antitrust claim for failure to adequately define the relevant market

14  where the complaint "contain[ed] no allegations regarding whether the software

15  products in th[e] market are reasonably interchangeable or whether there is cross-

16  elasticity of demand for these software products").

17       Second, Plaintiff fails to allege that HP had a dangerous probability of acquiring

18  monopoly power over the alleged relevant market.  *See InfoStream Grp.*, 2012 WL

19  3731517, at *6 (dismissing attempted monopolization claim where "[p]laintiffs ha[d]

20  not alleged that PayPal has a dangerous probability of success in establishing a

21  monopoly in the [relevant] market").  As an initial matter, Plaintiff's failure to identify

22  a relevant market forecloses any attempt to allege monopoly power.  "Without a

23  definition of that market there is no way to measure [a defendant's] ability to lessen or

24  destroy competition." *Walker Process Equip., Inc. v. Food Mach. & Chem. Corp.*, 382

25  U.S. 172, 177 (1965).  But even if Plaintiff had defined a relevant market, he offers no

26  factual allegations about HP's share of that market, nor any other facts that would

27  support an inference that there is a dangerous probability that HP will acquire

28  monopoly power.  Plaintiff's SAC offers no allegations about the existing competitors,

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

the dynamics of the market, barriers to entry, the strength of competition, what harm to competition has occurred, or how it occurred. This also mandates dismissal. *See*, *e.g.*, *Rheumatology Diagnostics Lab., Inc. v. Aetna, Inc.*, 2013 WL 5694452, at *16 (N.D. Cal. Oct. 18, 2013) ("[Plaintiffs] do nothing to explain the dynamics of those markets, let alone [defendant's] place in those markets. They have not adequately alleged how big [defendant] is in each market or whether it has market power, what harm to competition has occurred, whether prices have exceeded or will exceed competitive levels, and how other competitors are affected. Without such information, the plaintiffs fail to plead intent or a dangerous probability of achieving monopoly power."). Plaintiff asserts in conclusory terms that HP "has unfairly usurped the business of these third parties" (SAC ¶ 87), but his SAC does not explain how HP's conduct is likely to harm competition, which particular products are affected, which particular competitors are affected, or any actual effect on product pricing, all fatal shortcomings. *Smilecare Dental Grp.*, 88 F.3d at 783 ("Dismissal for failure to state a claim is appropriate where 'the complaint states no set of facts which, if true, would constitute an antitrust offense, notwithstanding its conclusory language regarding the elimination of competition and improper purpose.'") (citation omitted).

Plaintiff's failure to adequately allege a violation of the Sherman Act requires dismissal of his derivative claim under the "unlawful" prong. *See*, *e.g.*, *Wahoo Int'l, Inc. v. Phix Doctor, Inc.*, 2015 WL 3872343, at *8 (S.D. Cal. June 23, 2015) (dismissing "unlawful" prong claim predicated on Sherman Act claim on this basis); *see also Westlake Servs.*, 2015 WL 9948723, at *9 (same).

### 3.     Plaintiff Fails to State a Claim Under the "Unfair" Prong.

Plaintiff's SAC also fails to state a viable claim under the UCL prong prohibiting "unfair" business acts or practices, which, because Plaintiff's allegations sound in fraud, is also subject to Rule 9(b). *See Kenery v. Wells Fargo, N.A.*, 2015 WL 5138635, at *2 (N.D. Cal. Sept. 1, 2015) ("Where a claim under the unfair prong is based upon alleged fraudulent conduct, that claim likewise must satisfy the

1  heightened pleading requirements of Rule 9(b).").  Plaintiff's claim, however, does not

2  even meet Rule 8.

3       Courts have not coalesced on a uniform standard governing "unfair" UCL

4  claims in the consumer context.  *See Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d

5  718, 735-36 (9th Cir. 2007).  Courts generally apply either the "tethering" test set forth

6  by the California Supreme Court in *Cel-Tech Communications, Inc. v. Los Angeles*

7  *Cellular Telephone Co.*, 20 Cal. 4th 163 (1999) ("*Cel-Tech*"), or the "balancing" test

8  set forth in *South Bay Chevrolet v. General Motors Acceptance Corporation*, 72 Cal.

9  App. 4th 861 (1999) ("*South Bay*").  *See Lozano*, 504 F.3d at 735-36.  Plaintiff's

10  allegations do not satisfy either of the tests that courts have applied in assessing the

11  sufficiency of such claims.[5]

12      **a.**    **Plaintiff does not satisfy the *Cel-Tech* "tethering" test.**

13       The best-reasoned opinions analyzing which of the various standards should

14  govern the "unfair" prong in the consumer context conclude that the *Cel-Tech* test

15  should be applied, and the Court should apply it here.  The *Cel-Tech* test requires a

16  plaintiff to establish that the defendant engaged in "conduct that threatens an incipient

17  violation of an antitrust law, or violates the policy or spirit of one of those laws

18  because its effects are comparable to or the same as a violation of the law, or otherwise

19  significantly threatens or harms competition.'"  *Cel-Tech*, 20 Cal. 4th at 187.  Thus, the

20  alleged "unfairness must 'be tethered to some legislatively declared policy or proof of

21  some actual or threatened impact on competition.'"  *Lozano*, 504 F.3d at 735 (quoting

22  *Cel-Tech*, 20 Cal. 4th at 186-87).  Courts applying the *Cel-Tech* test correctly

23  recognize that "[a]lthough the California Supreme Court did not reach the issue of

24   

25     [5]  In addition to the *Cel-Tech* and *South Bay* tests, the SAC also invokes the three-
    pronged standard from the Federal Trade Commission Act, 15 U.S.C. § 45(a).  *See*

26  SAC ¶¶ 83-85.  Plaintiff's attempt to state a claim under that third test is misguided,
    as the Ninth Circuit has expressly stated that it "do[es] not agree that the FTC test is

27  appropriate" in consumer cases such as this one and has "decline[d] to apply the
    FTC standard" in this context.  *Lozano*, 504 F.3d at 736; *cf. Mass. Cas. Ins. Co.*,

28  2012 WL 12886215, at *8 (King, J.).  Regardless, Plaintiff's allegations would fail
    under the FTC test for all the same reasons that they fail under the other tests.

consumer cases, the rationale of *Cel-Tech* nonetheless compels the conclusion that the unfairness prong must be tethered to some legislative policy, otherwise the courts will roam across the landscape of consumer transactions picking and choosing which they like and which they dislike." *See Morris v. BMW of N. Am., LLC,* 2007 WL 3342612, at *8 (N.D. Cal. Nov. 7, 2007); *Mass. Cas. Ins. Co.*, 2012 WL 12886215, at *8 (King J.) ("*Cel-Tech*'s definition of 'unfair' applies even in consumer UCL actions."); *Dominic Corea*, 2013 WL 821193, at *4 & n.5 (King, J.) (same).

Plaintiff's conclusory allegations do not satisfy the *Cel-Tech* test. Plaintiff does not plausibly allege that HP violated any antitrust law or policy, nor does he allege a plausible anticompetitive effect that HP's conduct had or threatens to have.

In his SAC, Plaintiff for the first time attempts to tether his "unfair" UCL claim to the Sherman Act. *See* SAC ¶ 87 ("HP's conduct constitutes an attempt to monopolize, as defined by § 2 of the Sherman Antitrust Act."). But while Plaintiff's SAC is replete with antitrust buzzwords and catchphrases, he fails to allege the requisite specific facts supporting his conclusory allegations. As explained above, Plaintiff does not define the relevant market, demonstrate that there is a dangerous probability that HP will monopolize that market, or allege that HP engaged in any anticompetitive conduct that caused an antitrust injury. Plaintiff's attempt to premise his UCL claim upon the Sherman Act thus fails. *See*, *e.g.*, *Manwin Licensing Int'l S.A.R.L. v. ICM Registry, LLC*, 2013 WL 12123772, at *8 (C.D. Cal. Feb. 26, 2013) ("Where a party's UCL allegations are based on alleged antitrust violations, the failure to allege an antitrust violation results in the failure to allege unfair competition."); *Westlake Servs.*, 2015 WL 9948723, at *9 (plaintiffs' UCL claim under the "unfair" prong dismissed for the "same reasons" as their Sherman Act claims); *Los Gatos Mercantile, Inc. v. E.I. DuPont De Nemours & Co.*, 2014 WL 4774611, at *10 (N.D. Cal. Sept. 22, 2014) (same).

Plaintiff also fails to tether the alleged "unfair" conduct to "some actual or threatened impact on competition," another fatal deficiency under the *Cel-Tech* test.

20 Cal. 4th at 186-87.  Plaintiff generally alleges that, as a result of the firmware modification, HP "has gained an unfair advantage in the marketplace and has hindered competition for third party ink cartridges."  SAC ¶ 87.  But, again, Plaintiff does not identify *what* specific impact HP's alleged conduct has had on *which* cognizable product market and *how* any alleged anticompetitive impact on that market came to pass—all of which Plaintiffs must plead *plausibly* and *nonspeculatively*, with sufficient factual support.  *See Eclectic Props.*, 751 F.3d at 995-96.  Plaintiff's SAC thus falls short of even the Rule 8 pleading standard, let alone the heightened Rule 9(b) standard applicable here.  Having failed to plausibly allege that "the effect of [HP's conduct] amounts to a violation of antitrust laws or otherwise significantly harms competition," Plaintiff's "unfair" UCL claim must be dismissed.  *Levitt v. Yelp! Inc.*, 765 F.3d 1123, 1136-37 (9th Cir. 2014) (plaintiff's "very general allegation" that defendant Yelp's conduct "harms competition by favoring businesses that submit to Yelp's manipulative conduct and purchase advertising to the detriment of competing businesses that decline to purchase advertising" failed to state a viable claim); *see also Davis*, 691 F.3d at 1170 (dismissing action where the complaint "advance[d] no factual allegations to support the claim that [defendant's conduct] threatens to violate the letter, policy, or spirit of the antitrust laws, or that it harms competition").

The Court should thus apply the leading *Cel-Tech* test and dismiss Plaintiff's claim.

### b.    Plaintiff does not satisfy the *South Bay* "balancing" test.

Under the alternative *South Bay* test, conduct is "unfair" for purposes of UCL liability when it "offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *Davis*, 691 F.3d at 1169 (quoting *South Bay*, 72 Cal. App. 4th at 886-87) (quotation marks omitted).  Under this approach, courts examine the challenged practice's "impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer."  *Davis*, 691 F.3d at 1169 (quotation marks and citation omitted).  "In

DEFENDANT'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT
Case No. 5:16-cv-02063

short, this balancing test must weigh 'the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Id.* (citation omitted).

Plaintiff's SAC recites the legal requirements of the *South Bay* balancing test (SAC ¶¶ 89-91), but it contains no factual allegations explaining how and why the test could be satisfied here. Like the *Cel-Tech* test, the *South Bay* test requires Plaintiff to establish that the conduct at issue "offends an established public policy." As explained in the prior section, Plaintiff has not done so—simply adding the words "Sherman Act" to the SAC without plausible factual allegations in support does not now make his claim viable. And while Plaintiff parrots *South Bay*'s requirement that HP "has acted immorally, unethically, oppressively, unscrupulously, and has caused substantial injury to consumers" (SAC ¶ 91), he offers no plausible factual allegations that could support such a finding. This is not sufficient. *See Palmer*, 2016 WL 1535087, at *7 ("conclusory" allegations that defendant's conduct was "immoral, unethical, oppressive, unscrupulous, and injurious" held insufficient to satisfy the balancing test). Plaintiff's contention that HP unfairly "usurp[ed] a monopoly" by making "false representations and omissions" and by "invad[ing] the printers of consumers and corrupt[ing] them" (SAC ¶ 91) is duplicative of Plaintiff's FAL and CLRA claims and fails for the same reasons. And finally, as explained more fully below, Plaintiff never bargained for the right to use his HP printer with third-party ink cartridges. Thus, allegedly losing that right cannot constitute "unfair" conduct as a matter of substantive UCL law. *See Bardin v. Daimlerchrysler Corp.*, 136 Cal. App. 4th 1255, 1270 (2006*)* (UCL claim properly dismissed where plaintiff did not allege that the challenged "use of tubular steel exhaust manifolds violated any warranty or other agreement" or posed "personal injury or safety concerns").

Plaintiff also fails to plausibly allege that any harm he suffered outweighs the utility of HP's conduct, as the *South Bay* standard requires. In fact, the *South Bay* section of his SAC does not address this requirement at all. Elsewhere in his SAC, Plaintiff alleges:  that "Defendant's conduct as alleged herein solely benefits

21

Defendant while providing no benefit of any kind to any Purchaser"; that "[w]hile HP asserts that the restriction of use of third party ink cartridges is meant to prevent consumers from using unreliable third party products, Plaintiff alleges that this is a ruse"; and that the "software restriction does not offer any countervailing benefit to the marketplace." SAC ¶¶ 85, 87. Even assuming Plaintiff meant to direct these allegations towards the *South Bay* test, they are, again, "'no more than conclusions, [which] are not entitled to the assumption of truth.'" *Eclectic Props.*, 751 F.3d at 996 (quoting *Iqbal*, 556 U.S. at 679). Courts routinely dismiss UCL claims pled in such conclusory terms and devoid of plausible factual underpinning. *See*, *e.g.*, *Cullen v. Netflix, Inc.*, 2013 WL 140103, at *9 (N.D. Cal. Jan. 10, 2013) ("unsupported and conclusory assertions that the weight of Plaintiff's and class members' damages outweigh the utility of" the defendant's conduct held insufficient); *Williamson v. McAfee, Inc.*, 2014 WL 4220824, at *7 (N.D. Cal. Aug. 22, 2014) (dismissing UCL claim for failure to "include[] allegations that go towards comparing the harm to consumers against the utility of [d]efendant's conduct").

Thus, regardless of which test the Court applies, Plaintiff's allegations are insufficient to state a claim for relief under the "unfair" prong of the UCL.

### D.    Plaintiff Lacks Standing to Sue.

In order to maintain this action, Plaintiff must demonstrate that he possesses standing under Article III of the U.S. Constitution and under California substantive law. For Article III standing, a plaintiff must have "suffered an 'injury in fact' that is … fairly traceable to the challenged action of the defendant." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000). Statutory standing under the UCL and FAL similarly requires an "economic injury [that] was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Kwikset Corp. v. Super. Ct.*, 51 Cal. 4th 310, 322 (2011); Cal. Bus. & Prof. Code §§ 17204, 17535. Likewise, the CLRA requires a plaintiff to demonstrate actual injury caused by the challenged practice. *See* Civ. Code § 1780(a); *Meyer v. Sprint*

*Spectrum L.P.*, 45 Cal. 4th 634, 638 (2009) ("a plaintiff has no standing to sue under the CLRA without some allegation that he or she has been damaged by an alleged unlawful practice").

As a matter of law, consumers lack standing to pursue claims asserting alleged injuries "premised on the loss of a … benefit that was not a part of the bargain to begin with." *Birdsong*, 590 F.3d at 961; *see also Cox v. Valley Hope Ass'n*, 2016 WL 4680165, at *5 (W.D. Mo. Sept. 6, 2016) (under a benefit-of-the-bargain theory, "Ninth Circuit decisions have … required that the defendant deceived, misrepresented, or failed to provide an expressly-promised feature of its product"); *Lee v. Toyota Motor Sales, U.S.A., Inc.*, 992 F. Supp. 2d 962, 972 (C.D. Cal. 2014) ("There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct."). Here, Plaintiff does not allege any facts establishing that HP had an independent duty to make its printers compatible with third-party ink cartridges. Nor could he; there is no such duty at law. Instead, Plaintiff is alleging that compatibility with third-party ink cartridges was a basis of his bargain with HP when he bought his printers due to point-of-sale representations made by HP. But, as explained above, Plaintiff's allegations fail to sufficiently plead that the language on (or in) his printer box promised such compatibility and induced his purchase. Plaintiff's printer box referenced only "HP Original Ink." Strumwasser Decl., Ex. A.

Because Plaintiff fails to sufficiently and plausibly plead that HP ever represented that his printer would be compatible with all third-party ink cartridges, Plaintiff's alleged loss of that functionality cannot constitute the sort of injury bestowing legal standing. *See Birdsong*, 590 F.3d at 961 (alleged "risk of hearing loss" from use of iPods did not deprive plaintiffs of an "agreed-upon benefit in purchasing their iPods" because "plaintiffs do not allege that Apple made any representations that iPod users could safely listen to music at high volumes for

extended periods of time"); *see also Lee*, 992 F. Supp. 2d at 972 (dismissing UCL and CLRA claims on same logic); *Cox*, 2016 WL 4680165, at *5 (same).

Plaintiff's claim fails for the additional reason that he has not alleged that he was actually injured by the challenged conduct, even assuming *arguendo* that compatibility with third-party ink cartridges had been a basis of his printer bargain.  Injury allegations that are "conjectural and hypothetical" fail to meet Article III's requirement of an injury that is "'concrete and particularized' and 'actual or imminent.'"  *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016) (citation omitted); *see also, e.g., Lee*, 992 F. Supp. 2d at 972 (no standing where plaintiffs "ha[d] not had any negative experience with" the allegedly defective automatic breaking feature of their vehicle). Plaintiff carefully alleges for the first in his SAC that he purchased certain ink cartridges—for which he "did not maintain receipts"—and that "[u]pon coming home and installing the ink cartridge, Plaintiff could not get the ink cartridge to work." SAC ¶ 32-33.  Plaintiff fails to identify the cartridge that allegedly did not work and, conspicuously, fails to allege that the cartridge did not work because of the firmware he is challenging.  These purposefully vague allegations are not sufficient to confer standing.  *See Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 955 n.9 (9th Cir. 2011) ("To sufficiently allege standing, [the plaintiff] must do more than offer "labels and conclusions….").

Plaintiff's inability to establish Article III standing necessitates "dismissal for lack of subject matter jurisdiction" under Rule 12(b)(1), and his inability to establish statutory standing under substantive California law necessitates dismissal under Rule 12(b)(6).[6]  *See In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1109 (9th Cir. 2013) (applying both).

---

[6]  Nor will Plaintiff be able to amend his complaint (again) to plead a cognizable injury.  As Plaintiff is aware, HP has already made available to him (and indeed to all purchasers) an optional firmware update that removes the ink-cartridge authentication feature at issue.  *See Dedicated to the best printing experience*, https://newsblog.ext.hp.com/t5/HP-newsroom-blog/Dedicated-to-the-best-printing-experience/ba-p/451.

Gibson, Dunn & Crutcher LLP

24

# V.  CONCLUSION

Even after amending his pleading twice, Plaintiff's SAC falls far short of the specificity required for any of his claims to survive a motion to dismiss.  Plaintiff fails to allege a single affirmative misstatement or actionable nondisclosure attributable to HP that could sustain any of his primary "false advertising" claims.  Plaintiff's alternative claims that HP engaged in "unlawful" or "unfair" business practices under the UCL are equally deficient, both consisting of only boilerplate recitations of antitrust claim elements and unsupported legal conclusions.  Plaintiff thus fails to state any viable claim for relief.  Plaintiff's SAC must also be dismissed for want of standing under Article III of the U.S. Constitution and under California substantive law—Plaintiff alleges no facts that could support a finding that he suffered a cognizable injury resulting from HP's conduct.

Dated:  December 23, 2016

Respectfully submitted,

Samuel G. Liversidge
Rodney J. Stone
Jared M. Strumwasser
GIBSON, DUNN & CRUTCHER LLP

By:   */s/ Samuel G. Liversidge*
        Samuel G. Liversidge

Attorneys for Defendant HP INC.

Gibson, Dunn &
Crutcher LLP